UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM WHITFIELD,

          Plaintiff,                       Case No. 1:18-cv-11566
                                          District Judge Thomas L. Ludington
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, Tom Whitfield, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits

prior to July 5, 2017, his 55th birthday.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 15), the Commissioner's cross-motion for summary

judgment (DE 17), Plaintiff's reply (DE 18) and the administrative record (DE 9).

### A.    Background and Administrative History

Plaintiff turned 50 years of age on July 5, 2012, at which point he became a

"[p]erson closely approaching advanced age." 20 C.F.R. §§ 404.1563(d),

416.963(d). From July 2012 to August 2013, Plaintiff worked at a car wash. (R. at

161.) Plaintiff alleges his disability began on October 1, 2013, at the age of 51.

(R. at 142.) He turned 55 on July 5, 2017, at which point he became a "[p]erson of

advanced age." (R. at 18; 20 C.F.R. §§ 404.1563(e), 416.963(e).)

In his disability report, he lists several conditions (severe osteoarthritis; high

blood pressure; a collapsed artery in his left leg; an education limited to 8th Grade;

and disadvantaged reading, writing and comprehension skills) as limiting his

ability to work. (R. at 189.) His application was initially denied on July 13, 2016.

(R. at 66-82.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R.

at 87-88.) On July 11, 2017, ALJ Crystal L. White-Simmons held a hearing, at

which Plaintiff and a vocational expert (VE), James Lozer, Ed.D., testified. (R. at

24-65, 218.) On August 18, 2017, ALJ White-Simmons issued a partially

favorable opinion in which she determined that Plaintiff was not disabled prior to

July 5, 2017, but became disabled on that date and continued to be disabled

through the date of the decision.  (R. at 8-23.)[1]

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

135-141, 6-7.)  However, on March 16, 2018, the Appeals Council denied

Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ White-Simmons's decision

became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 18, 2018.

**B.      Plaintiff's Medical History**

The administrative record contains approximately 230 pages of medical

records, which were available to the ALJ at the time of her August 18, 2017

decision.  (R. at 23, 219-448 [Exhibits 1F-10F].)  These materials will be discussed

in detail, as necessary, below.

**C.      The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since October 1, 2013, the alleged onset date.  (R. at

14.)  At **Step 2**, the ALJ found that, since the alleged October 1, 2013 onset date of

---

[1] The ALJ's opinion interchangeable uses "prior to July 5, 2017," and "[b]eginning on July 4, 2017[.]"  (R. at 12, 19-20.)  The Court assumes this was a typographical error and uses July 5, 2017, Plaintiff's 55th birthday, consistent with Plaintiff's July 5, 1962 date of birth.  (R. at 142.)

disability, Plaintiff had the following severe impairments:  bilateral knee

osteoarthritis and left meniscal tear.  (*Id.* at 14-15.)  At **Step 3**, the ALJ found that,

since the alleged October 1, 2013 onset date of disability, Plaintiff had not had an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id.* at 15.)  **Between Steps 3 and 4** of

the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[2] and determined that, since October 1, 2013, Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitation*] . . . except no
> climbing ladders, ropes or scaffolds; occasional climbing of ramps or
> stairs, balancing, stooping and crouching; no kneeling or crawling
> [*i.e., postural limitations*]; and requires the use of a handheld assistive
> device for ambulation [*i.e., exertional/manipulative limitation*].

(*Id.* at 15-18.)  At **Step 4**, the ALJ determined that Plaintiff has been unable to

perform any past relevant work since October 1, 2013.  (*Id.* at 18.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, prior to July 5, 2017, there were jobs that existed in significant

numbers in the national economy that Plaintiff could have performed, such as

assembler, packer, and inspector.  (*Id.* at 19.)

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

However, the ALJ found that, beginning on July 5, 2017, which was Plaintiff's 55th birthday and the date his age category changed, and again considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 20.)

In sum, the ALJ determined that:  **(1)** with respect to Plaintiff's application for DI benefits, Plaintiff was not disabled, as defined in the Social Security Act, through December 31, 2015, the date last insured (DLI); and, **(2)** with respect to his application for supplemental security income (SSI) benefits, Plaintiff has been disabled, as defined in the Social Security Act, beginning on July 4 or 5, 2017. (*Id.*)[3]

## D.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

---

[3] While the administrative transcript appears to contain only Plaintiff's application for DI benefits (R. at 142-143), the ALJ's opinion makes clear that Plaintiff also filed for SSI benefits (R. at 12, 20).  (*See also* DE 15 at 4 n.1, DE 17 at 4 n.2.)

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's appeal centers around the need for an assistive device while

standing and the effect of a such a requirement upon his exertional limitations.

Plaintiff argues that the ALJ's findings as to his need for an assistive device,

namely that the RFC requires one for ambulation but is silent as to whether

Plaintiff needs one for standing, "are neither supported by substantial evidence nor

adequately explained."  (DE 15 at 10-12; *see also* DE 18 at 4-5.)  The

Commissioner contends that Plaintiff "cannot prove he requires a cane to stand[.]"

(DE 17 at 6-9.)

> **1.    With respect to Plaintiff's application for DI benefits, the relevant medical evidence of record (MER) appears to be limited.**

The ALJ stated that "the evidence of record does not document any medical

treatment from the alleged onset date of disability until 2016."  (R. at 17.)  In fact,

based on Plaintiff's alleged onset date (AOD) of October 1, 2013, and his DLI of

December 31, 2015, there seem to be only a few records relevant to Plaintiff's

application for DI benefits:  **(a)** Joy J. Darden, M.D.'s July 8, 2015 progress notes,

marked "new patient" (R. at 247-248); and **(b)** the July 8, 2015 lab results (R. at 249-253).

Although the ALJ does not appear to have expressly cited these documents, this was a new patient physical, which Plaintiff admits was the beginning of his treatment with Dr. Darden.  (DE 15 at 7.)  Importantly, Dr. Darden's July 8, 2015 progress notes do not appear to contain a prescription for an assistive device.  (R. at 247-248.)

### 2.    Dr. Darden's medical source statement (MSS) is dated May 31, 2017.

The record contains other treatment notes from Dr. Darden, such as those dated February to April 2016 and May 2016 to May 2017.  (R. at 239-246, 319-357).  On May 31, 2017, Dr. Darden completed a physical MSS, which reflects that Plaintiff has been a patient since July 8, 2015 and that Dr. Darden has seen him monthly since February 24, 2016.  (R. at 446.)  Although the second page of this form is missing, it is clear that Dr. Darden checked "Yes" when asked "[w]hile engaging in occasional standing/walking, must your patient use a cane or other hand-held assistive device[,]" and noted that this was due to imbalance, pain, and instability.  (R. at 447.)  Moreover, Dr. Darden opined that Plaintiff had "significant limitations with reaching, handling or fingering[,]" including that he could use his right and left hands less than 5% of an 8-hour working day to "grasp, turn[,] twist objects."  (R. at 447-448.)

### 3.      Plaintiff July 11, 2017 testimony touched upon standing and use of an assistive device.

Plaintiff testified on July 11, 2017 that he does not use the bus, because he

cannot "[s]tand that long." (R. at 29.)  Plaintiff also testified that he has had his

cane "[a]bout two years[,]" and that it had been prescribed by Dr. Darden.  (R. at

42.)  Plaintiff testified that he also has a walker, which was also prescribed by Dr.

Darden.  (R. at 42-43.) When asked how he decides which to use, Plaintiff

explained:  "Well if I got to go into market or something, I have my walker[,]" but

"if I'm being out the door, I just take my cane."  (R. at 42.)

Plaintiff holds the cane in his right hand.  (R. at 44, 54-55.)  If he put the

cane down, he would not be able to pick something up with both hands.  (R. at 44.)

He can walk "[a]bout half a block" with the cane but cannot "walk at all without

it[.]"  (R. at 45-46.)  If he just has his cane and does not lean on anything, he can

stand for "[a] couple of minutes."  (R. at 45.)  Plaintiff agreed that he can get a

good grip on the handle of his cane, and, when asked "are you able to button your

shirt with no problem[,]" Plaintiff answered, "Yeah[,] I can button it."  (R. at 46.)

When asked whether he uses "any assistive devices to get dressed[,]" Plaintiff

answered, "No."  (R. at 53.)

Plaintiff cannot write standing up, because he "need[s] to have [his] cane

with [him]."  (R. at 55.)  When he goes to church, he sits the entire time.  (*Id.*)

After considering various portions of Plaintiff's testimony, the ALJ determined

that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully supported for the reasons explained in this decision." (R. at 16.) Plaintiff does not challenge the ALJ's credibility finding in this appeal. (DE 15 at 10-12, DE 18 at 4-6.)

### 4. The VE testified about the effects of using an assistive device while *standing* upon job availability.

The VE testified about the effect of ambulatory and standing difficulties upon job availability. (R. at 61-63.) Of particular note is the following exchange:

Q    If we add to that hypothetical the use of a handheld assistive device for ambulation, could that individual do the claimant's past work?

A    No.

Q    And is there any other work that individual could perform?

A    Now just to be clear, when the person is standing they don't need the cane or the assistive device?

Q    For this particular hypothetical that's correct.

A    Then jobs I cited would still remain in the same numbers. There's no walking. There is just standing at a workstation.

Q    Okay. If the light – *if the individual did need the assistive device for standing and ambulation, is there any light work that could be performed?*

A    *No. That would be work [preclusive] for light work.*

(R. at 62-63 (emphases added).)[4]  The ALJ accorded significant weight to the VE's job identification testimony.  (R. at 19.)

Based on the VE's testimony, Plaintiff points out that, if he "needed his cane while standing, he would not be capable of light work and could perform sedentary work at best[,]" in which case he claims he would "grid out."  (DE 15 at 10-11.)  Stated otherwise:  **(a)** Plaintiff was 51 years of age on his AOD, *i.e.*, "closely approaching advanced age[,]" 20 C.F.R. §§ 404.1563(d), 416.963(d); **(b)** he had a limited education; **(c)** he had unskilled past relevant work; and **(d)** *if he had been limited to sedentary work*, it would have resulted in a finding of disability.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.09.  Thus, Plaintiff's appeal pivots on the exertional limitations of sedentary versus light work.

### 5.    Plaintiff has not shown that he required a cane to stand within the relevant period.

At the heart of Plaintiff's argument is his contention that the ALJ's decision "does not explain how she came to determine that [P]laintiff required a cane to ambulate, but not to stand."  (DE 15 at 11.)  Plaintiff contends that his hearing testimony and Dr. Darden's MSS do not make a distinction between using a cane for ambulation or standing and "both reports suggest the necessity of such a device for either activity."  (*Id.*; R. at 45, 447.)

---

[4] In two instances, the hearing transcript uses the word "occlusive," both of which the Court assumes to be transcriptional errors for "preclusive."  (*See* R. at 63.)

In fashioning Plaintiff's RFC, the ALJ referred to Plaintiff's testimony about standing and using a cane. (R. at 16, 45.)[5] In addition, the ALJ expressly cited to October 3, 2016 records from an ambulatory services clinic, which note that Plaintiff "ambulates with a mildly antalgic gait with the use of a cane assist." (R. at 17, R. at 419.) Thereafter, the ALJ found that Plaintiff was "restricted to the light exertional level, with postural limitations and requires a cane to ambulate." (R. at 17.) Then, the ALJ addressed the opinion evidence, including Dr. Darden's May 31, 2017 physical medical source statement (MSS), even though it is dated well beyond Plaintiff's DLI. (R. at 17-18.) After having noted, *inter alia*, that Plaintiff "requires the use of a cane[,]" the ALJ ultimately assigned the opinion "little weight," based on its inconsistency with the evidence of record and explained:

> For example, this evaluator opined that the claimant has problems using his hands, but there is no diagnosed hand impairment in the evidence of record. The claimant even testified that he is able to use his hands to button shirts and is able to grip his cane. In fact, testing revealed that the claimant has 5/5 grip strength bilaterally ([R. at 438]).

---

[5] Although the ALJ noted that Plaintiff could "stand for a couple of minutes without his cane[,]" (R. at 16), Plaintiff actually testified that he could stand for a "couple of minutes" if it was just him and his cane (R. at 45).

(R. at 17-18.)[6]  *See also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff acknowledges that the ALJ did not fully credit Plaintiff's statements and assigned only "little weight" to Dr. Darden's MSS.  (DE 15 at 12; R. at 16, 17-18.)  Plaintiff does not challenge either the credibility determination or the weight given to the opinion evidence in this one issue appeal.  (*See* DE 15 at 3, 10-12; DE 18 at 4-6.)  Still, Plaintiff argues that the ALJ "did not specifically address whether she was accepting [P]laintiff's testimony or Dr. Darden's opinion as to this specific subject," *i.e.*, the need for a cane while standing, nor did the ALJ "offer any basis for the distinction she drew from that or any other evidence."  (DE 15 at 12.)  Yet, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9P, 1996 WL 374185, *7 (S.S.A. July 2, 1996).[7]  Dr. Darden's May 31, 2017 MSS—again, well after

---

[6] The February 6, 2017 notes from an ambulatory services clinic do note "grip strength is +5/5 bilaterally[,]" and, as noted earlier, Plaintiff did testify about his ability to button a shirt and grip his cane.  (R. at 438, R. at 46.)

[7] *See Williams v. Comm'r of Soc. Sec.*, No. 2:16-CV-14065, 2018 WL 1322396, at *10 (E.D. Mich. Feb. 26, 2018) (Patti, M.J.) ("Although Plaintiff cites to instances in the record noting cane use, including his own testimony (which the ALJ found not entirely credible), he is unable to point to any objective medical evidence demonstrating the need for a cane while standing or walking.") (internal footnote

Plaintiff's DLI—simply agrees that Plaintiff "must . . . use a cane or other hand-held assistive device" while "engaging in occasional standing/walking[.]"  (R. at 447.)  Perhaps more importantly, the argument portions of Plaintiff's motion and reply do not provide any authority for the notion that an ALJ is required to be so specific, i.e., parsing out little snippets of what the ALJ does and does not accept from an otherwise discounted opinion or from discredited testimony.  (DE 15 at 10-12, DE 18 at 4-6.)

In essence, Plaintiff seeks clarification as to why the ALJ effectively determined that Plaintiff did not need a cane *while standing*.  To the extent Plaintiff argues that his testimony about the length of time he has had a cane corresponds with a prescription from Dr. Darden during the initial visit, Dr. Darden's July 8, 2015 progress notes *do not* appear to contain a prescription for an assistive device.  (DE 18 at 5, R. at 42, 247-248.)

---

and citation omitted), *report and recommendation adopted*, No. 16-14065, 2018 WL 1316167 (E.D. Mich. Mar. 14, 2018) (Tarnow, J.); *Morrison v. Comm'r of Soc. Sec.*, No. 14-10984, 2015 WL 1197689, at *17 (E.D. Mich. Mar. 16, 2015) (Roberts, J., *adopting report and recommendation of* Hluchaniuk, M.J.) ("plaintiff does not point to any *medical evidence* indicating that he requires a cane to stand.") (emphasis added); and, *Blye v. Barnhart*, No. 03-71796, 2004 WL 2216533, at *8 (E.D. Mich. Aug. 3, 2004) (*report and recommendation of* Whalen, M.J.) ("Absent any *medical evidence* that use of a cane was necessary, the ALJ was not required to include that factor in his RFC finding or his hypothetical question, and the Plaintiff is not entitled to a remand on that basis.") (emphasis added), *report and recommendation adopted by* Cleland, J. (E.D. Mich. Aug. 31, 2004).

Plaintiff may well be correct that Dr. Darden's May 31, 2017 opinion about

an assistive device applied to *both* standing *and* walking.  (R. at 447, DE 15 at 11,

DE 18 at 4.)  Still, Plaintiff has not pointed to any records contradicting the

Commissioner's assertion that "[t]he first time Dr. Darden mentioned a cane was in

March 2016. . . [,]" months after Plaintiff's DLI.  (DE 17 at 9, R. at 242.)  Instead,

Plaintiff asks the Court to infer from Dr. Darden's March 2016 note that Plaintiff

needed a cane on, or perhaps even before, his DLI (December 31, 2015),

particularly in light of Plaintiff's own "corroborating testimony" regarding how

long he has had his assistive device prescription.  (DE 18 at 5-6; R. at 242, 42.)

*See Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000) ("Retrospective medical

diagnoses of PTSD, even if uncorroborated by contemporaneous medical reports

but corroborated by lay evidence relating back to the claimed periods of disability,

can support a finding of past impairment.").[8]

Ultimately, the ALJ assessed an RFC that "requires the use of a handheld

assistive device for ambulation." (R. at 15, 17.)  Plaintiff seeks clarification of

---

[8] Incidentally, the Commissioner contends that "Dr. Darden's treatment notes make abundantly clear that plaintiff only required the cane for walking." (DE 17 at 8.) In support of this statement, the Commissioner points to several of Dr. Darden's post-DLI notes, which mention that Plaintiff *ambulates* with a cane. (DE 17 at 8; R. at 242, 322, 324, 326, 330, 332, 334, 336, 338, 340, 342, 346; *see also* R. at 240.)  Indeed, the ALJ cited one of these records to document that, in 2017, Plaintiff needed a knee replacement.  (R. at 17, 324.)  As such, the issue of ambulation was front and center for the ALJ.

why the ALJ did not assess such a requirement for standing, and he is correct that

"'[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting

or rejecting particular sources of evidence.  It is absolutely essential for meaningful

appellate review.'"  *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519

(6th Cir. 1985) (quoting *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984)).

Still, Dr. Darden's July 8, 2015 initial notes do not appear to contain a prescription

for an assistive device, and, as Plaintiff concedes, the ALJ did not fully credit Dr.

Darden's MSS or Plaintiff's statements.  Without a pre-DLI medical record

regarding an assistive device, a developed challenge to the ALJ's credibility

determination, or a showing that the ALJ's consideration of the opinion evidence

was errant, the RFC should be stand.[9]

## F.    Conclusion

This case comes down to a matter of timing.  While the post-DLI medical

records document use of a cane (at least for ambulation), Plaintiff points to no

medical record of a cane having been prescribed during the relevant period, *i.e.*,

from the October 1, 2013 AOD to the December 31, 2015 DLI.  Plaintiff has the

burden of proof on his statement(s) of error.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the

---

[9] Having reached this conclusion, I need not address the Commissioner's
alternative argument (DE 17 at 9), or Plaintiff's reply regarding same (DE 18 at 5-
6).

burden of proof; this burden shifts to the Commissioner only at Step Five.").

Plaintiff has not shown legal error that would upend the ALJ's decision. For the

foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's

motion for summary judgment (DE 15), **GRANT** Defendant's motion for

summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's

decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.* Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  July 25, 2019                        s/*Anthony P. Patti*
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE